WEBSTER MANUFACTURING COMPANY, Respondent, vs. MONTREAL RIVER LUMBER COMPANY, Appellant.

*December 12, 1914—January 12, 1915.*

*Contracts: Validity: Sunday: Confirmation by subsequent letters: Damages: Computation: Changing jury's finding.*

1. Although a telephone conversation between the parties on Sunday did not constitute a binding contract, letters which followed and confirmed such conversation and which were complete and specific in their terms constituted a valid written contract.

2. Where, upon the other facts found by the jury in an action for breach of a contract to deliver lumber, the total amount of damages was simply a matter of mathematical computation, it was proper for the trial court to make such computation and to modify, in accordance therewith, the gross sum found by the jury.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

Action for breach of contract to deliver lumber. Plaintiff manufactures chairs at Superior, and defendant operates a sawmill in Iron county. May 11, 1912, the parties made a written contract by which defendant agreed to sell and deliver to plaintiff "all number two common and better grades of basswood and soft elm lumber then sawed or to be sawed during the season of 1911–1912 at its said mill in Iron county," further agreeing that the quantity should be 250,000 feet or more of basswood and 100,000 feet or more of elm, shipment to begin September 1, 1912, and to continue at the rate of not more than one carload a day or three carloads per week, to be completed by December 1, 1912, the plaintiff agreeing to pay therefor as follows:

"Basswood:
    "For grades first and second, $36 per M feet.
    "For grade number one common, $26 per M feet.
    "For grade number two common, $17 per M feet.
"Soft elm:
    "For grades first and second, $34 per M feet.

"For grade number one common, $24 per M feet.
"For grade number two common, $15 per M feet."

In June, 1912, and before delivery of any lumber the defendant's mill was destroyed by fire and defendant became unable to fulfil the contract by December 1st. On Sunday, September 1st, Mr. Highfield, president and manager of the plaintiff, had a telephone conversation with Mr. Meyers, the president and general manager of the defendant, with regard to the matter, and their versions of the understanding arrived at differ radically. Mr. Highfield's version is that Mr. Meyers told him that they could not deliver the lumber on account of the fire and he would like to continue the contract; that he would furnish the full amount specified in the contract and also the full sawing of the mill on basswood and soft elm for 1913 at the same price and on the same terms as the contract of May 11, 1912; that he (Highfield) replied that "if it was satisfactory for him to get us his next year's as promised" the plaintiff would continue the contract as requested under the same terms and conditions, "and he said he would confirm it." Mr. Meyers testifies that he called Mr. Highfield up and explained to him that the mill had burned and they would not be able to fill the contract within the time limit, but that they would begin sawing and filling the contract as soon as possible, but that shipments would probably not begin before spring; that Highfield agreed to allow the extension and asked if defendant expected to manufacture other lumber and he (Meyers) said "Yes," and Highfield asked if he could have it, to which Meyers replied that defendant would be glad to sell him any lumber they had for sale at any time; that nothing was said about price.

Following this conversation and on September 17, 1912, Meyers wrote a letter to Highfield containing the following sentence:

"Confirming conversation which we had over the phone regarding the lumber which we expect to produce during the

next season, we will ship same to you at the same price and under the same contract."

To this Mr. Highfield replied by letter September 19th, as follows:

"Regarding the conversation with your Mr. Meyers over the phone, Sunday, September 1st, we wish to mention here the understanding the writer had on same and wish to confirm it as a matter of record for our files, that you are unable to fill the contract of May 11, 1912, between your company and this company on soft elm and basswood lumber for the quantities stated therein, the time specified in said contract, and that you wish the contract continued until next year; that we agree to continue the same for you, for which you agree to complete our contract next year, 1913, and to deliver to us as much more than the quantity called for in the contract as you might saw; in other words, you would increase the quantities provided for in the contract as much as possible and would give us your entire output of soft elm and basswood, $1\frac{1}{2}''$, and that you would instruct your sawers to saw all soft elm and basswood to this thickness from now on.

"This we beg to confirm and believe we have stated the conversation correctly, and as we are now ready for shipments we beg to ask that you let them go forward at once."

To this Mr. Meyers replied September 23d, as follows:

"As to the balance of your letter, will state that we expect to let you have all the elm and basswood which we manufacture during the balance of 1912 and 1913. We hope that it will be very much more than the amount claimed under your contract. Of course, this will be conditioned upon the inspection, which we assume will be satisfactory."

The jury by special verdict found (1) that by the telephone conversation of September 1st the parties came to the understanding that defendant was to deliver to plaintiff all its soft elm and basswood output of the then following season; (2) that Mr. Highfield's version of that conversation was substantially true; (3) that the defendant failed to deliver 165,000 feet of basswood and 20,854 feet of elm;

(4) that the plaintiff's damages for nondelivery of the lumber were $771.51; (5) that the market price of lumber in the summer and fall of 1913 was as follows:

"Basswood, first and second, $39.25.
"Basswood, No. 1 common, $30.25.
"Basswood, No. 2 common, $21.25.
"Elm, first and second, $42.
"Elm, No. 1 common, $32.
"Elm, No. 2 common, $20."

On plaintiff's motion the trial judge increased the plaintiff's damages to $806.42 and rendered judgment for that amount, from which judgment the defendant appeals.

*A. W. McLeod,* for the appellant.

*H. V. Gard,* for the respondent.

WINSLOW, C. J.   Doubtless the telephone conversation did not constitute a binding contract for the reason, among others, that it took place on Sunday.   However, the letters which followed the conversation seem to be complete and specific in their terms, and we think the trial court was entirely justified in holding that they constituted a written contract which was in all essentials in accordance with the plaintiff's version of the telephone conversation.

There was no error in changing the amount of the damages found by the jury.   That body having found specially the market prices of the various qualities of lumber covered by the contract, and there being no dispute in the evidence as to the percentages of the various contract qualities of lumber contained in the undelivered lumber which defendant had at its mill and refused to deliver, and no dispute as to the amount of undelivered lumber, the total amount of damages was simply a matter of mathematical calculation.   The court made the calculation and modified the gross sum found by the jury in accordance therewith.   This was an eminently proper course.

*By the Court.*—Judgment affirmed.